UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| AYSIN KOPARAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-01383-AGF |
| ) | |
| THE BOEING COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant The Boeing Company's ("Boeing") motion for partial dismissal, seeking to dismiss Counts II and V of Plaintiff Aysin Koparan's employment discrimination complaint for failure to state a claim. For the reasons set forth below, the Court will grant the motion.

## BACKGROUND

Taken as true for the purpose of this motion, Plaintiff alleges the following facts. Plaintiff was employed by Boeing for 15 years, last serving as a Senior Business Operation Lead in St. Louis County, Missouri. ECF No. 6, Compl. ¶ 8. During her time as a Boeing employee, she routinely received stellar performance reviews—until she began raising concerns in the summer of 2022. *Id*. ¶ 9. On August 17, 2022, Plaintiff attended an after-hours event with Boeing coworkers at Syberg's restaurant on Dorsett Road. *Id*. ¶ 10. While there, Greg Corcoran ("Corcoran"), a Senior Lead Engineer above her in the corporate hierarchy, asked Plaintiff, in front of other employees, "[w]hen did you have sex last?" *Id*. ¶ 11. After Plaintiff chose not to respond, he then asked about

1

her first sexual experience, which prompted Plaintiff to reply "[d]o not talk to me that way again." *Id*. ¶ 12.  Corcoran followed by asking, "Are you having a cat fight?" (when referring to Plaintiff's relationship with a female co-worker, and adding, "[w]hat's going on between you and your husband?" and "[y]ou don't seem like the marrying type." *Id*. ¶ 13.

On August 18, 2022, Plaintiff sent a text to Corcoran about his comments and requested that he not speak to her that way again. *Id*. ¶ 14.  Additionally, Plaintiff decided to file a formal complaint against him. *Id*. ¶ 16.  On August 28, 2022, Corcoran texted Plaintiff, "[d]id you by chance get to the Festival of Nations[.]  Thought about you when the picture in the paper was a Turkish booth," and on September 1, 2022, he texted: "[o]ne last text. Are we never going to talk unless it's hello and good morning or work related? Work is totally separate. I will never mix personal and work." *Id*. ¶¶ 20-21.  On September 3, 2022, Plaintiff responded to Corcoran, "[t]here are 2 separate relationships-personal and work. You are only WORK. So, please don't text my personal number, just use work email to communicate. Thanks." *Id*. ¶ 22.

Plaintiff was later interviewed by a member of Boeing's Ethics department on September 15, 2022, and was subsequently asked to "walk back that her complaints were related to sexual harassment." *Id*. ¶¶ 25-26.  Fearing for her job and feeling pressured, she agreed. *Id*.  Following this, Plaintiff began experiencing different forms of alleged retaliation: she received fewer work assignments, was excluded from meetings and discussions, attitude towards her at the office noticeably changed, and Corcoran openly discussed Plaintiff's complaint with coworkers in a resentful manner. *Id*. ¶¶ 28-32.

2

Plaintiff also received her first negative performance review from her supervisor, Ryan Taylor, because even though she did "good work," the ethics complaint "slowed (him) down." *Id*. ¶¶ 35-37.  This, in turn, affected her workload, bonus, and ability to make lateral moves or be promoted. *Id*. ¶¶ 38-39.  Plaintiff was further discouraged from making complaints by Jordan Woodward, a Senior Leader, by implying to her over text that she should read a book titled "Don't Sweat the Small Stuff." *Id*. ¶ 42.

Despite informing Corcoran that she did not want to be contacted on her personal number, Plaintiff still received unwanted communication, both virtually and at the office. *Id*. ¶ 19.  Between the dates of September 3, 2022, and June 3, 2023, Corcoran flirtatiously lingered around her desk and sent Plaintiff multiple texts after being told not to contact her personal number. *Id*. ¶¶ 19-24.  Specifically, on February 7, 2023, and June 2, 2023, respectively, Corcoran sent Plaintiff the following messages:

> "Sorry to text your work phone with personal question but I just wanted to let you know I am praying for your people in turkey[.]"
>
> "I know you hate me but rest assured I continue to pray for you and your entire family."

*Id*. ¶¶ 23-24.

And, on June 3, 2023, Corcoran asked if Plaintiff was "popping into work," which initiated a conversation described by Plaintiff in her complaint as follows:

> "No. Will be on leave and most likely won't even have a job soon. Pretty much was told to find another job … Ryan pretty much gave me a bad performance review and took my work from me and gave it to someone else. Double retaliation…"
>
> Mr. Corcoran replied: "You can have my job."

>Plaintiff then asked if he had gotten any written corrective action, to which he replied: "No. Someday we will talk(.) Did you get one(?) I would so love to get together and talk when you get yourself together[.]"
>
>[Plaintiff] then mentioned going to Ryan about Michelle, who was raised in connection with the comments at [S]yberg's. Mr. Corcoran then replied:
>
>"You just said something that solved the puzzle for me[.]" (reply from [Plaintiff])
>
>"That you told him about our conversation" (reply from [Plaintiff])
>
>"That I asked when you first had sex" (reply from [Plaintiff])
>
>"I guess you told him more!!" (reply from [Plaintiff])
>
>"We really need to get together and clear the air!" (further discussion, including [Plaintiff] stating, "Jordan is nice to me, but I can see the pressure of Ryan telling him to get rid of me(.) They have the power to get rid of me")
>
>"Would you mind sharing your address" ([Plaintiff] asks why.)
>
>"Perhaps I want to send something kind(.) I would never show up without being invited." ([Plaintiff] stated "You don't have to do that and I am sure you are not crazy (enough) to show up at my door")
>
>"I know better than to show up at your door you will shoot me! lol"

*Id*. ¶¶ 43-46.

Plaintiff filed suit on August 30, 2024, after filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving a notice of right to sue.  Plaintiff asserts claims under Title VII for retaliation (Count I); hostile work environment based on sex (Count II); sex discrimination (Count III); retaliation in violation of the Family Medical Leave Act ("FMLA") (Count IV); discrimination based on national origin and race, in violation of 42 U.S.C. § 1981 ("Section 1981") (Count V);

4

and retaliation/illegal discharge in violation of the Missouri Whistleblower Protection Act, Mo. Rev. Stat. § 285.575 (Count VI).

## ARGUMENT OF PARTIES

Boeing has moved to dismiss Count II (hostile work environment based on sex) as untimely, arguing that Plaintiff failed to include any facts alleging sexual harassment occurring within 300 days of the filing of her Charge of Discrimination.  ECF No. 10, Motion to Dismiss ("MTD") ¶ 3.  Boeing asserts that, because the behavior Plaintiff was subjected to during the filing period was neither based on sex nor met the standard of being severe or pervasive, Plaintiff is unable to use them to anchor the untimely allegations.  *Id*. ¶ 4.  Boeing also argues that, by failing to demonstrate that the alleged harassment was based on sex or affected her employment, Plaintiff has not made out an actionable claim for hostile work environment.  *Id*.  Further, Boeing seeks dismissal of Count V (race discrimination under Section 1981) because Plaintiff's allegations based on national origin do not entitle Plaintiff to protection under Section 1981.  ECF No. 11.

As to Count II, Plaintiff opposes the partial motion to dismiss and argues both that she has satisfied the pleading standard for a hostile work environment claim and that the claim is timely because a continuing violation has been sufficiently pled.  *See* ECF No. 14, Plaintiff's Response in Opposition to [Boeing's] MTD ("Opp.").  As to Count V, Plaintiff has agreed to voluntarily dismiss her Section 1981 claim without prejudice.

In reply, Boeing does not oppose the dismissal of Count V without prejudice.  As such, the Court will dismiss Count V without prejudice.

5

## STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party.  *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).  But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## DISCUSSION

To establish a prima facie claim for hostile work environment under Title VII, a plaintiff must establish the following elements: (1) the plaintiff belongs to a protected group; (2) unwelcome harassment occurred; (3) a causal nexus exists between the harassment and the protected group status; and (4) the harassment affected a term, condition, or privilege of employment.  *Collins v. Pac. R.R. Co.*, 108 F.4th 1049, 1053 (8th Cir. 2024).  Where the alleged harassment is by a non-supervisory coworker, plaintiffs must also show their employer knew or should have known of the harassment and failed to take proper action.  *Sickels v. McDonough*, No. 4:21-CV-00963-JAR, 2024 WL 3844850, at *8 (E.D. Mo. Aug. 16, 2024) (quoting *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 799 (8th Cir. 2021)).

"The fourth element requires [Plaintiff] to demonstrate that the harassment she experienced was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Collins*, 108 F.4th at 1053

(internal quotations and citation omitted).[1]  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Courts will consider the "totality of the circumstances" in determining whether a hostile work environment exists.  *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004).  Factors that are considered include the frequency and severity of the behavior; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether the behavior unreasonably interferes with plaintiff's job performance.  *Harris*, 510 U.S. at 23; *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002).

"The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." *Al–Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005).  For that reason, the standards for a hostile environment are "demanding . . . [and] conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003) (citations omitted).  "More than a few isolated

---

[1]   As discussed further below, the Eighth Circuit has continued to impose a "severe or pervasive" harassment requirement for hostile work environment claims, even after the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), which addressed the standard for demonstrating discrimination with respect to the terms and conditions of employment for the purpose of a disparate treatment claim under Title VII. *See Collins*, 108 F.4th at 1053-54 (addressing both disparate treatment and hostile work environment claims post-*Muldrow*).

incidents are required," and the alleged harassment must be "so intimidating, offensive, or hostile that it 'poisoned the work environment.'" *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 967 (8th Cir. 1999) (citations omitted).

Applying this analysis, the Court concludes that Plaintiff has failed to state a prima facie hostile work environment claim. The Court finds that Plaintiff's complaint satisfies the first two elements of a hostile work environment claim, namely that (1) Plaintiff is a member of a protected class, and (2) that she was subjected to unwelcome harassment. The Court will also assume without deciding that Plaintiff has plausibly pled facts in support of the third element by pleading facts showing that at least some of Corcoran's communications with or conduct toward Plaintiff was based on her sex, so as to causally connect the alleged harassment to Plaintiff's protected status.

However, Plaintiff has failed to plausibly plead facts in support of the fourth element: that the complained-of harassment was severe or pervasive as to affect her employment. In other words, even if Plaintiff is correct that a continuing violation has been pled, and the Court views the allegations as "a single unlawful employment practice," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002), the alleged harassment still does not rise to an actionable level. As such, the Court will dismiss Count II without reaching the question of timeliness.

**Unwelcome Harassment *Based on Sex***

To establish the third element of hostile work environment, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex.'" *Onacle*

8

*v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).  The only communications or text messages from Corcoran alleged to be even remotely "tinged with offensive connotations," were his questions at Syberg's asking Plaintiff about her sexual experiences, her relationship with her husband, and her possible "cat fight" with a female co-worker, as well as his later text acknowledging his conduct at Syberg's.[2]  Compl. ¶¶ 11-15, 46.  Plaintiff further alleges that Corcoran would "flirtatiously linger[]" around her desk.  *Id.* ¶ 19.  Accepting these allegations as true, the Court will assume without deciding that Plaintiff has alleged some degree of harassment based on sex.

**Severe or Pervasive Harassment**

Even assuming that Plaintiff has alleged some form of harassment based on sex, her hostile work environment claim must be dismissed because she has not plausibly pled that the alleged harassment was so severe or pervasive as to make the work environment objectively hostile.  In attempting to satisfy this element, Plaintiff, unsuccessfully, compares her situation to cases with facts inapposite to hers.  *See e.g., Kopman v. City of Centerville*, 871 F. Supp. 2d 875, 887 (D.S.D. 2012) (denying defendant's motion for summary judgment because he made "[t]wo to three comments a week for 14 months," which were directed to [plaintiff's] body, including mention of her breast size, leering at

---

[2]  None of the other text messages mentioned or even implicated Plaintiff's sex at all, except perhaps Corcoran's text wishing Plaintiff a Happy Mother's Day.  Compl. ¶ 24.  The other texts, such as Corcoran saying he was "pray[ing] for [Plaintiff] and [Plaintiff's] entire family," asking if Plaintiff was "popping into work" when she had taken FMLA leave, and asking if "[Plaintiff] would [] mind sharing [her] address" so he could "[p]erhaps . . . send something kind," cannot plausibly be construed as harassment based on sex  *Id.* ¶¶ 23-24, 43, 46.

9

her, commenting on how she looked in jeans, and making derogatory remarks to her); *E.E.O.C. v. Wyeth*, 302 F. Supp. 2d 1041, 1053 (N.D. Iowa 2004) (determining genuine issues of fact precluded summary judgment on plaintiff's sexually hostile work environment claim because defendant made derogatory comments to her, drove by and yelled at her as she worked, and made physical threats towards her regarding her family); *Hanna v. Boys & Girls Home & Family Servs., Inc.*, 212 F. Supp. 2d 1049, 1053-54 (N.D. Iowa 2002) (denying summary judgment due to plaintiff being repeatedly subjected to unwanted sexual advances by her coworker, including him grabbing his buttocks, thrusting his groin at her, and repeatedly commenting on her walk and appearance).  The facts giving rise to Plaintiff's claim are far less egregious than any of the above-cited cases.

*First*, the frequency of the conduct alleged here is insufficient to demonstrate a hostile work environment existed.  The complained-of behavior—while unwelcome—was infrequent.  Following the initial incident at Syberg's on August 17, 2022, and continuing until June 3, 2023, Corcoran contacted Plaintiff on only four separate occasions after being told not to contact her.  Courts have found similar situations to be below the requisite pleading standard.  *See Duncan*, 300 F.3d at 935 (holding that a single request for a relationship, four or five isolated incidents of hand touching, a request to draw a planter with an obvious sexual innuendo, and teasing was not enough to constitute a claim for hostile work environment); *see also Hairston v. Wormuth*, 6 F.4th 834, 841-42 (8th Cir. 2021) (holding a prima facie case was not made because plaintiff's three

10

alleged instances of non-physical harassment did not permeate or poison the work environment).

While the Eighth Circuit has signaled that a few—or even one—alleged instance of harassment can create an issue of fact as to whether a hostile work environment exists, those cases involved far more egregious behavior and/or sexual harassment than that alleged here. *See Hathaway v. Runyon*, 132 F.3d 1214, 1222 (8th Cir. 1997) (emphasizing that two instances of sexual touching and the following sexual innuendos made over a continuous period of time were sufficient to uphold a jury verdict finding that a hostile work environment existed); *Todd v. Ortho Biotech, Inc.*, 175 F.3d 595, 598 (8th Cir. 1999) (holding that a single severe act of harassment [in this case, a sexual assault] can, without more, constitute a hostile work environment that is actionable under Title VII).

*Second*, the severity of the alleged conduct is not indicative of a hostile work environment.  Corcoran's questions and comments about Plaintiff's sex and personal life on August 17, 2022, may be perceived as "rude or unpleasant" *Alagna*, 324 F.3d at 980, or even "vile or inappropriate" but not necessarily actionable.  *See Blomker v. Jewell*, No. 14-174, 2015 WL 853617, at *6 (D. Minn. Feb. 26, 2015), *aff'd* 831 F.3d 1051 (8th Cir. 2016).  As noted above, almost all of Corcoran's alleged communications were not based on Plaintiff's sex at all.  Further, the messages were relatively benign.  For example, stating that a Turkish festival booth made him think about Plaintiff might be deemed unpleasant, but it falls far below the "demanding" pleading standard. *See Alagna*, 324 F.3d at 980.  Messages sent by Corcoran after being asked not to contact Plaintiff's

11

personal number were similarly inoffensive: mentioning that he is praying for Plaintiff's family and people in Turkey, wishing her a Happy Mother's Day, asking if she was coming into the office, suggesting they meet at some point to clear the air, and asking for her address to send her something kind.  Compl. ¶¶ 23-24, 43-46.  Even taken together with Corcoran's conduct at Syberg's, these allegations are simply insufficient to plausibly state a claim for hostile work environment.

Plaintiff cites to *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024) to argue that a plaintiff need only show "some harm respecting an identifiable term or condition of employment," which need not be significant, serious, or substantial.  While *Muldrow* focuses on claims of disparate treatment rather than claims of hostile work environment, Plaintiff seeks to extend *Muldrow*'s reasoning to this case by citing to *McNeal v. City of Blue Ash*, 117 F.4th 887, 904 (6th Cir. 2024), which held that "hostile-work-environment claims arise out of the same statutory language as disparate-treatment claims."

Plaintiff's reliance on *McNeal* is misplaced.  In coming to its decision, the Sixth Circuit still conducted an analysis of whether the environment would reasonably be perceived as hostile or abusive.  *See McNeal*, 117 F.4th at 904 (citing *Harris*, 510 U.S. at 22).  To do so, the court considered the totality of circumstances using the same factors the Court applies here—frequency and severity of the behavior; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether the behavior unreasonably interferes with plaintiff's job performance.  *McNeal*, 117 F.4th at 904.  Only after deciding a genuine issue of fact existed regarding severity, the Sixth Circuit reversed the district court's judgment on the hostile work environment claim.  *Id.*

Regardless of the holding in *Muldrow*, a plaintiff must still demonstrate that the complained-of conduct was severe or pervasive.  *See Davis v. McDonough*, No. 23-3419, 2025 WL 212065, at *2 (8th Cir. Jan. 16, 2025) (per curiam) (decided post-*Muldrow* and listing factors courts should consider in determining whether harassment was severe and pervasive, including discriminatory intimidation, ridicule, and insult); *see also Collins*, 108 F.4th at 1053 (requiring—post-*Muldrow*—that alleged harassment to be severe or pervasive to make out a hostile work environment claim); *Johnson v. United States Postal Service*, No. 24-1381 (8th Cir. Mar. 10, 2025) (per curiam (same).

*Third*, Plaintiff fails to plausibly allege that Corcoran's conduct was physically threatening or humiliating.  *See Harris*, 510 U.S. at 23.  The Eighth Circuit has appeared critical of hostile work environment claims where there is no alleged touching, physical violence, or overt threats.  *See Blomker*, 831 F.3d at 1058 (affirming defendant's motion to dismiss, mentioning that "none of the alleged incidents involved actual touching"); *Hales v. Casey Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018) (affirming the district court's grant of summary judgment in favor of defendant where there was no touching or overt threats); *LeGrand v. Area Res. for Cmty. & Hum. Servs.*, 394 F.3d 1098, 1102 (8th Cir. 2005) (grating summary judgment in favor of defendant where "[n]one of the incidents was physically violent or overtly threatening.").

In this matter, Plaintiff alleges no instances of physical touching.  And, while she contends that Corcoran's texts included "threatening allusions to showing up at her house," (Compl. ¶ 46; Opp. at 6) the actual messages would not be perceived, objectively or subjectively, as overtly threatening.  For instance, Plaintiff highlights Corcoran text

13

message asking for Plaintiff's address to send her something kind, stating that he "kn[e]w better than to show up at [Plaintiff's] door." Compl. ¶ 46.

But conduct far more egregious than this has routinely been held insufficient to establish a hostile work environment claim. *See Duncan*, 300 F.3d at 934-35. For example, in a case relied upon by the Eighth Circuit in *Duncan*, the Seventh Circuit held that a plaintiff's claim failed because the complained-of conduct was not sufficiently severe and pervasive "when plaintiff's supervisor asked plaintiff for dates, asked about her personal life, called her a 'dumb blond,' put his hand on her shoulder several times, placed 'I love you' signs at her work station, and attempted to kiss her twice at work and once in a bar." *See Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (collecting cases).

In the immediate case, Plaintiff was never physically touched, she was not overtly threatened, and the comments made to her at the bar and over text were far less inappropriate than those deemed unactionable in *Weiss*. Behavior may be deemed "boorish, chauvinistic, and decidedly immature," but that does not mean it necessarily amounts to an objectively hostile work environment. *See Duncan*, 300 F.3d at 935. As such, the Court finds Corcoran's remarks do not plausibly rise to the level of severe or pervasive. Therefore, the Court will dismiss Plaintiff's hostile work environment claim.[3]

---

[3] This holding does not preclude Plaintiff's separate claims for discrimination and retaliation in the other counts of her complaint that are not the subject of this motion to dismiss.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's partial motion to dismiss is **GRANTED**.  ECF No. 10.  Counts II and V are **DISMISSED**; however, the dismissal of Count V is **WITHOUT PREJUDICE**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of March, 2025.

15